OPINION
{¶ 1} Defendant-appellant, Andrew D. Lee, appeals from a judgment of the Franklin County Court of Common Pleas, based upon a jury verdict, convicting defendant of three counts of aggravated felony-murder, each having three enumerated death penalty specifications, as well as one count each of aggravated robbery, kidnapping, and rape. The latter three offenses served as the underlying felonies for the three aggravated felony-murder convictions. Each of the six counts carried firearm specifications pursuant to R.C. 2941.145. The jury's inability to reach a verdict on an additional count of aggravated murder, premised on causing death purposely and with prior calculation and design, resulted in a mistrial on that count. Because sufficient evidence does not support defendant's rape conviction and the felony murder conviction premised on rape, we reverse in part and remand for resentencing.
 {¶ 2} Defendant's convictions arise out of the murder of Shauna Sandercock (hereinafter "the victim") on March 25, 2002, in Columbus, Ohio. At approximately 1:50 p.m. on that day, the victim was found dead in a storeroom of a Game-Arama store located at 3103 West Broad Street that the victim owned with her fiancé The store sold new and used video games. The victim was found naked, on her knees, with her face down and her buttocks elevated. Dr. Keith Norton, an assistant county coroner, responded to the scene and found the body still warm at 2:30 p.m. After conducting an autopsy the following day, Dr. Norton opined the cause of death was blunt trauma to the victim's neck by manual and ligature strangulation.
 {¶ 3} According to state's evidence, defendant opened a checking account with Bank One on February 11, 2002. Several ATM transactions were conducted on the account between 2:55 a.m. Sunday, March 24 until 11:30 a.m. Monday, March 25, 2002. During that period of time, the cardholder made eight purported deposits totaling $33,000. Actually, seven of the deposit envelopes were empty and one contained $20. On March 25, 2002, a balance inquiry was made on the account at 9:10 a.m. at an ATM machine located near a dry cleaners where defendant had just worked his last day. At 11:06 a.m., a fake deposit of $500 at an ATM on East Broad Street was followed by an immediate attempt to withdraw $200. At 11:30 a.m. at a Bank One branch at 3100 West Broad Street, the cardholder made another fake deposit of $500 at the ATM machine, followed by another unsuccessful withdrawal. Surveillance cameras revealed that the person attempting to access the account was defendant.
 {¶ 4} Between 11:30 a.m. and noon that day, defendant arrived at the home of the Minnefield family, which was about a 10 to 20 minute walk from the Bank One on West Broad Street. Defendant was at the Minnefield home when Teresa Minnefield came home from school for lunch between 11:40 a.m. and noon. Defendant left the Minnefield home after Teresa Minnefield returned to school for the afternoon session, stating that he was going to visit his cousins.
 {¶ 5} At around noon, the victim received a telephone call at Game-Arama from her fiancé, and at 12:38 p.m., the victim had a telephone conversation at the store with a family friend that ended at 12:48 p.m.
 {¶ 6} At approximately 12:55 p.m., Andrea McKinley went into Game-Arama with her children. She testified the store seemed deserted, although she could not see into the two rooms behind the counter; the bathroom door was slightly ajar, and the door to the storeroom was shut tightly. After trying unsuccessfully to make her presence known by coughing loudly and banging her keys on the counter, McKinley left the store after 10 or 15 minutes.
 {¶ 7} Around 1:15 p.m., Shawn West entered the store, which he noted seemed empty. The phone was ringing, and he saw no one, but he heard a "thumping" noise emanating from one of the back rooms. Shortly after West arrived, Richard Taylor, Sr., and Richard Taylor, Jr., came into the store. They also heard the phone ring and thumping noises coming from the back of the store.
 {¶ 8} A few minutes later, an African-American man came out of the storeroom, wiping his face with a bandana or rag and carrying a semi-automatic weapon. The gunman told the three customers to leave, and they did. As Richard Taylor, Jr. neared the door, he observed the gunman pick up something off the floor. The Taylors left the store, went to Rally's nearby, and asked someone to call 9-1-1. West ran out of the store to his mother's house that was near. As he arrived at the home, he turned and saw the fleeing African-American man, who was now carrying a backpack. By photo array and at trial, West and Richard Taylor, Jr. positively identified the gunman as defendant; they were "one hundred percent" confident of their identification.
 {¶ 9} Defendant was at the Minnefield home shortly after 2:30 p.m. when Teresa Minnefield returned from school with several classmates. Teresa Minnefield looked for a lighter in defendant's jacket pocket and pulled out a bracelet. Defendant became agitated and told her not to go through his pockets. Ebony Finch and Dorothy Minnefield argued over the bracelet. Ebony Finch took the bracelet and later turned it in to the police. The victim's fiancé testified that the bracelet Teresa found and Ebony took was exactly like the bracelet that the victim always wore, but did not have when her body was discovered. On behalf of defendant, Dorothy Minnefield testified that the bracelet was in the Minnefield home before March 25, 2002, the day of the murder.
 {¶ 10} At the crime scene, defendant's fingerprints were recovered from inside the glass front door of the Game-Arama. Evidence was presented that the glass was cleaned every Saturday. The cash register, which routinely had at least $100 in it, was open and empty, and a gun that was usually kept by the cash register was gone. Subsequently, detectives recovered a backpack from under defendant's bed that contained a video game system with a mismatched cord.
 {¶ 11} Following the jury's verdicts, the trial court sentenced defendant accordingly. Defendant appeals from his convictions of rape, kidnapping, aggravated robbery, as well as three counts of aggravated felony-murder based on those offenses, assigning the following errors:
Assignment of Error No. 1
The Trial Court erred when it overruled appellant's motions for judgment of acquittal as to count 2 (Aggravated Murder During the Course of Committing or Attempting to Commit Rape) and for Count 7 (Rape) because there was insufficient evidence to support those convictions.
Assignment of Error No. 2
The Trial Court erred in entering the judgment of conviction for Count 2 (Aggravated Murder During the Course of Committing or Attempting to Commit Rape) and Count 7 (Rape) because those convictions [are] against the manifest weight of the evidence.
Assignment of Error No. 3
The Trial Court erred when it overruled appellant's motions for judgment of acquittal as to the firearm specifications to Counts 2, 4, 6, and 7 because there was insufficient evidence to support those specifications.
Assignment of Error No. 4
The Trial Court erred in entering the judgment of convictions for the firearm specifications to Counts 2, 4, 6, and 7 because those convictions [are] against the manifest weight of the evidence.
Assignment of Error No. 5
The Trial Court erred when it determined that defense witness clarence minnefield properly invoked his fifth amendment privilege against self-incrimination.
Assignment of Error No. 6
The Trial Court erred when it overruled appellant's motion for mistrial due to forensic prosecutorial misconduct in arguing victim impact issues during the trial phase.
Assignment of Error No. 7
Trial counsel rendered ineffective assistance of counsel when they failed to request or utilize an expert in the field of eyewitness identification.
Assignment of Error No. 8
The Trial Court erred when it sentenced appellant to non-minimum, maximum, consecutive sentences based on facts not found by the jury or admitted by appellant.
 {¶ 12} In his first assignment of error, defendant challenges the trial court's overruling his Crim.R. 29 motions for acquittal, contending there was insufficient evidence to establish the crimes of rape and aggravated felony-murder predicated on rape.
 {¶ 13} Crim.R. 29(A) provides that a trial court shall enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the charged offense. A trial court may not enter a judgment of acquittal if the record demonstrates that reasonable minds could reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215,216. In making its determination, the court must construe the evidence in a light most favorable to the prosecution. Id.
 {¶ 14} A virtually identical standard of review applies to defendant's contention regarding sufficiency of the evidence. In reviewing a claim of insufficient evidence, we construe the evidence in a light most favorable to the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,260, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 15} Defendant was convicted of rape based on anal intercourse, in violation of R.C. 2907.02(A)(2), 2907.01(A). The Ohio Supreme Court has held "there is sufficient evidence of anal intercourse, for purposes of the crime of anal rape under R.C.2907.02, where the trier of fact finds that the defendant penetrated, however slightly, the victim's anus with any part of the defendant's body, or with any instrument, apparatus, or other object. If the evidence shows that the defendant made contact only with the victim's buttocks, there is not sufficient evidence to prove the defendant guilty of the crime of anal rape. As a corollary, where the evidence shows that the defendant attempts to penetrate the victim's anus, and, for whatever reason, fails to do so and makes contact only with the buttocks, there is sufficient evidence to prove the defendant guilty of the crime of attempted anal rape." State v. Wells (2001), 91 Ohio St.3d 32,35.
 {¶ 16} Defendant contends the deputy coroner, who examined the victim's body and testified to his observations of the victim's physical condition, failed to opine with reasonable certainty, or even a probability, that penetration of the victim's anus occurred. Accordingly, defendant asserts, the state failed to prove penetration of the victim's anus, as required byWells, supra, and thus presented insufficient evidence to support defendant's convictions for rape and aggravated felony-murder based on that offense.
 {¶ 17} Deputy Coroner Dr. Keith Norton, who performed an autopsy on the victim the day after the murder, testified to the victim's condition based on observations he made during his examination of the victim. According to Dr. Norton, the victim had fresh scrapes on her forehead, right cheek, nose, and upper chest, and an abrasion on her right knee that was consistent with a rug burn. Dr. Norton observed marks and bruising around the victim's neck that were consistent with ligature and manual strangulation, and there was hemorrhagic bleeding under the clear membrane in front of the victim's eyes that Norton testified resulted from force applied around her neck. The victim's internal injuries included various bruises under the scalp and on the muscles in the neck, in addition to fractures of the victim's voice box and of a bone at the back of the tongue. With regard to the victim's anal area, Dr. Norton stated he found no fluid that appeared to be semen in or around the victim's anus, and he further testified:
A. In that area, I found an area of bruising right at the anal verge, the anal verge of the anus is the hole where the feces comes out and right at the edge of that there was a bruise. In the middle at the back, sort of at the top in the back, but then off to one side there was a small tear in the skin right there.
Q. Is there any way to tell — well scratch that.
These injuries appear to be consistent with the anal penetration either by an object or body part? Did these injuries appear to be consistent with that type of penetration into the anus?
A. Yes, they did, because of the bruising and the tearing, yes.
Q. I will hand you state's Exhibit 28-F, as in Frank. Can you tell us what that is, please?
A. State's Exhibit 28-F is a color photograph that shows both the anus and vagina. And the number tag is closer to the anus, just below the five, and that number tag there is an area of bruising, a little bluish discoloration area at the edge of that anus. And then a little bit farther off to one side there is a narrow tear in the skin, and that is the laceration or tearing that I have described.
Q. Okay. Is that a fair and accurate picture?
A. Yes, it is a fair and accurate picture of what I saw.
Q. Did you — you indicated that there was — you described the tears, and you also described this bruising. Would a — would penetration into the anus with an objection [sic] necessarily cause the bruising, or would this have to be something behind the penetrating that would cause the bruising externally, or do you know?
A. I can't tell. I think the penetrating could cause it, especially if it didn't go directly into the hole and it went nearby and bumped first before it went in. So, yeah, it couldhave been just the object penetrating or it could have — couldhave been something hitting the outside.
(Emphasis added; Tr. Vol. 11, at 146-148.)
 {¶ 18} In his written coroner's report, which was submitted to the jury, Dr. Norton noted his physical findings regarding the victim's anal area and observed "there is a contusion superiorly in the midline at the anal verge and a very shallow laceration superiorly and on the right side of the anal verge[,]" and "[t]here are no fluids or adhesions in any body cavity." At trial, consistent with his written report, Dr. Norton opined to a reasonable degree of medical certainty that the cause of the victim's death was blunt trauma to the neck, and that the manner of her death was homicide.
 {¶ 19} In its brief on appeal, the state acknowledges that Dr. Norton's testimony was equivocal, in that he simply agreed the victim's wounds were "consistent with" penetration, and he could not tell whether penetration or an object hitting the outside of the anus caused the bruising. The state nevertheless argues that the jury could conclude the victim had been anally raped based on Dr. Norton's medical testimony and written coroner's report regarding the victim's various injuries. As further support for its contentions, the state notes also the position in which the victim's body was found, as well as lay witness testimony regarding "thumping" noises emanating from the back room from which defendant emerged and in which the victim's body was discovered.
 {¶ 20} Even when the evidence is viewed in a light most favorable to the prosecution, it is insufficient to prove penetration, however slight, of the victim's anus, rather than merely an attempt to penetrate the victim's anus. No fluid that appeared to be semen or any of the bruising or lacerations, from which a reasonable inference of rape could be raised, was found inside the victim's anus. A finding that actual penetration occurred is based solely on speculation, even when the physical findings concerning the victim's body are considered in conjunction with the "thumping" sounds and the position of the victim's body. Because insufficient evidence of penetration supports a finding that defendant anally raped the victim, we reverse defendant's convictions of rape and aggravated felony-murder premised on rape.
 {¶ 21} Although the evidence is insufficient to sustain a verdict of anal rape in violation of R.C. 2907.02(A)(2), it is sufficient to sustain a verdict on the lesser-included offense of attempted anal rape, R.C. 2907.02(A)(2), 2923.02(A). See Wells,
supra; State v. Williams (1996), 74 Ohio St.3d 569, 577, certiorari denied, 519 U.S. 835, 117 S.Ct. 109 (stating the crime of attempted rape is a lesser included offense of rape). We accordingly modify the trial court's judgment, vacating defendant's convictions of rape and aggravated murder premised on rape and entering verdicts of guilt on one count of attempted rape and one count of aggravated murder premised on attempted rape. See Crim.R. 33(A)(4); State v. Reed (1981),65 Ohio St.2d 117, 123; State v. Wells (Jan. 7, 2000), Montgomery App. No. 17501, affirmed, 91 Ohio St.3d 32. The verdicts on the remaining offenses remain unaltered.
 {¶ 22} The offense of rape is a first-degree felony, R.C.2907.02(B), having a 10 year maximum penalty, R.C. 2929.14(A)(1), which the trial court imposed in this case. The lesser offense of attempted rape is a second-degree felony, R.C. 2923.02(E), having an eight-year maximum penalty under R.C. 2929.14(A)(2). Because the crime of attempted rape is subject to a lower maximum penalty than the crime of rape, the trial court on remand must impose an appropriate sentence on the modified verdict of attempted rape.
 {¶ 23} Aggravated murder premised on attempted rape, R.C.2903.01(B), is subject to the same statutory penalty of life imprisonment without parole as was defendant's conviction of aggravated murder premised on the crime of rape. See R.C.2929.02(A). In sentencing defendant, the trial court merged the counts of aggravated murder premised on rape and aggravated murder premised on kidnapping into the aggravated murder count premised on aggravated robbery, for which the trial court properly sentenced defendant to life in prison without parole in accordance with R.C. 2929.02 and the jury's sentencing recommendation. Nevertheless, on remand, in addition to resentencing defendant on a count of attempted rape, the trial court also must resentence defendant on the count of aggravated murder and count of aggravated robbery, into which the kidnapping offense is properly merged for purposes of sentencing, because the trial court expressly stated it was imposing maximum, consecutive sentences on defendant in part because the victim was anally raped, which we have concluded the evidence does not support.
 {¶ 24} Based on the foregoing, defendant's first assignment of error is sustained to the extent the evidence is insufficient to support the jury's guilty verdicts on the crimes of rape and aggravated murder premised on rape. However, because sufficient evidence supports guilty verdicts on the crimes of attempted rape and aggravated murder premised on attempted rape, the judgment is modified accordingly and the case is remanded for resentencing consistent with this court's decision.
 {¶ 25} Defendant's second assignment of error asserts the verdicts of rape and aggravated murder premised on rape are against the manifest weight of the evidence because the evidence at trial does not establish anal penetration of the victim. Because insufficient evidence of penetration supports the verdicts, resulting in our sustaining defendant's first assignment of error in that regard, defendant's second assignment of error is moot, and we decline to address it.
 {¶ 26} In his third and fourth assignments of error, defendant challenges the jury's findings regarding the firearm specifications that relate to the counts of kidnapping and rape and the counts of aggravated murder premised on kidnapping and rape. Defendant asserts the evidence is insufficient to prove he displayed, brandished, indicated he possessed, and/or used a firearm to facilitate the enumerated offenses, and further contends the jury's findings in that regard are against the manifest weight of the evidence.
 {¶ 27} After merging some of defendant's convictions for sentencing purposes, the trial court imposed sentences on three felony counts, including rape, aggravated robbery and aggravated murder predicated on aggravated robbery. The three-year mandatory sentences on the firearm specifications for each of the three counts were merged for sentencing purposes into one mandatory three-year sentence to be served prior to the remaining sentences.
 {¶ 28} Notably, defendant does not dispute the sufficiency or weight of the evidence concerning the jury's findings on the firearm specifications for the counts of aggravated robbery or aggravated murder premised on aggravated robbery. The jury's findings on either of these firearm specifications is sufficient to support the single "merged" three-year mandatory sentence the trial court imposed for all the firearm specifications. R.C.2929.14(D)(1)(a)(ii); State v. Smith (Mar. 5, 1991), Franklin App. No. 89AP-1491. Thus, even if error occurred in assessing firearm specifications relating to the counts of kidnapping and rape, and aggravated murder premised on those felonies, defendant has failed to establish demonstrable prejudice resulting from such error. Because competent evidence supports defendant's conviction on the "merged" firearm specifications, and the conviction is not contrary to law, defendant's third and fourth assignments of error are overruled.
 {¶ 29} In his fifth assignment of error, defendant asserts the trial court erred in finding that defense witness Clarence Minnefield had a valid Fifth Amendment privilege not to testify on behalf of defendant.
 {¶ 30} The Fifth Amendment privilege ensures that a witness in a criminal proceeding is not compelled to present self-incriminating testimony. A valid assertion of the privilege exists when a witness has reasonable cause to apprehend a real danger of incrimination, and it extends to answers that would furnish a link in a chain of evidence exposing the witness to criminal activity. United States v. Apfelbaum (1980),445 U.S. 115, 127, 100 S.Ct. 948, 955; Hoffman v. United States (1951),341 U.S. 479, 486, 71 S.Ct. 814, 818; Blau v. United States
(1950), 340 U.S. 159, 71 S.Ct. 223; and State v. Landrum
(1990), 53 Ohio St.3d 107, 120-121, certiorari denied (1991),498 U.S. 1127. When a witness asserts a privilege against self-incrimination, a court may not rely upon the witness' claim alone. Landrum, supra. The court has a duty to determine if the witness' refusal to answer is justified. Id. When the court is satisfied that the witness' refusal to answer is justified, the court may excuse the witness from testifying. State v. Reiner
(2000), 89 Ohio St.3d 342, 353, overruled on other grounds (2001), 532 U.S. 17; State v. Kirk (1995), 72 Ohio St.3d 564.
 {¶ 31} Here, defendant sought to introduce testimony from Clarence Minnefield, a juvenile, that the bracelet Ebony Finch obtained on March 25, 2002, the day the victim was murdered, was present in the Minnefield residence sometime prior to that day. Such evidence could rebut other evidence that the bracelet in question was stolen from the victim on March 25, 2002 and was discovered in defendant's pocket a few hours after the murder. Defendant argued he was entitled to question Clarence Minnefield in front of the jury regarding the bracelet, despite defense counsel's acknowledging that the witness reportedly made statements indicating he acted as a look-out when the same or a similar bracelet was stolen from a residence. The prosecution advised the court it would pursue that issue on cross-examination if the witness were permitted to testify.
 {¶ 32} By way of a specific proffer, defendant asked Clarence Minnefield, outside the presence of the jury, whether he had seen the bracelet in question before March 25, 2002, and whether he knew from where it came. As to each question, Clarence Minnefield, through a guardian ad litem, asserted his Fifth Amendment privilege against self-incrimination. The trial court found the witness' answers would tend to implicate him in a criminal act of burglary. Finding that the Fifth Amendment privilege was appropriately asserted, the trial court excused Clarence Minnefield as a witness.
 {¶ 33} The trial court did not err in finding that the witness' assertion of the Fifth Amendment privilege was justified. The witness' responses to questions from the defense and prosecution regarding the bracelet in question could have furnished an evidentiary link that would expose the witness to criminal liability for theft. Under the circumstances, the trial court did not err in excusing the witness from testifying at trial. Moreover, defendant suffered no prejudice as a result of Clarence Minnefield's not testifying at trial because testimony that the bracelet was in the Minnefield home before March 25, 2002 came in through another witness, Dorothy Minnefield. Defendant's fifth assignment of error is overruled.
 {¶ 34} In his sixth assignment of error, defendant asserts the trial court erred in failing to grant a mistrial during closing argument when the prosecution made improper victim-impact remarks as follows:
[PROSECUTOR:] But I may have misspoken earlier. Because I said he robbed her of all the human dignity she had. And maybe that is the one thing that he couldn't ever take away from Shauna. Because we know that Shauna has left behind a lot of people who loved her. She left behind a family.
[DEFENSE COUNSEL:] Objection.
THE COURT: Overruled.
[PROSECUTOR:] She left behind a family. She left behind friends. We know she was capable of giving affection and receiving affection. We know that she's a young mom, and we know that she was unlike the defendant financial —
[DEFENSE COUNSEL:] Objection, Your Honor.
THE COURT: Again, overruled.
[PROSECUTOR:] We know that she was unlike the defendant, financially responsible. And that may have led to her demise. So the defendant restrained this woman, he raped her, he robbed her. But the only thing he robbed her of are the material possessions that ended up in the hands of this defendant's associates. Because it cannot be said that he robbed her of her dignity.
(Tr. Vol. 14, at 26-27.)
 {¶ 35} Defendant contends the prosecution's comments prejudiced defendant and served to deny him a fair trial because they focused upon emotional issues designed to inflame the passion of the jurors and were not related to any issue in the case.
 {¶ 36} Generally, the test regarding prosecutorial misconduct in closing argument is whether the remarks were improper, and if so, whether they prejudicially affected the substantive rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14. Prosecutors are granted wide latitude in closing argument and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the defendant was denied a fair trial. State v. Maurer
(1984), 15 Ohio St.3d 239, 266, 269, certiorari denied (1985),472 U.S. 1012. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." State v.Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, at ¶ 44, stay granted on other grounds, 101 Ohio St.3d 1418, 2004-Ohio-123, quoting Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940.
 {¶ 37} In considering the admissibility of victim-impact evidence, the Ohio Supreme Court has stated that the "circumstances of the victims are relevant to the crime as a whole. The victims cannot be separated from the crime."Williams, at ¶ 43, quoting State v. Lorraine (1993),66 Ohio St.3d 414, 420. In State v. Loza (1994), 71 Ohio St.3d 61, 82, certiorari denied (1995), 514 U.S. 1120, the Ohio Supreme Court held that while arguments based on victim-impact evidence are improper in the sentencing phase of a capital trial, the prosecution's comments regarding such evidence are admissible in the guilt phase of the proceedings. Subsequently, in State v.Fautenberry (1995), 72 Ohio St.3d 435, 439-440, certiorari denied, 516 U.S. 996, the court clarified its holding in Loza,
stating, "we find that evidence which depicts both the circumstances surrounding the commission of the murder and also the impact of the murder on the victim's family may be admissible during both the guilt and the sentencing phases." (Emphasis sic.) See, also, State v. McNeill (1998), 83 Ohio St.3d 438,445-446, certiorari denied (1999), 526 U.S. 1137 (determining that the prosecution's statements made in closing argument that the victim had a life, a job and a family did not affect the outcome of the trial).
 {¶ 38} Here, the prosecution's remarks were proper commentary based upon evidence presented at trial or upon reasonable inferences drawn from the evidence, and they did not improperly appeal to the jury's emotion or create prejudicial error.Fautenberry; Loza; Williams. Moreover, even if the comments at issue were improper, they were brief, constituting only three paragraphs out of 39 pages of the prosecution's closing argument. Further, the trial court instructed the jury that the closing arguments of counsel were not evidence. In light of the entire case, the prosecution's remarks did not prejudicially affect defendant's substantial rights so as to deny him a fair trial. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for mistrial, and defendant's sixth assignment of error is overruled.
 {¶ 39} Defendant's seventh assignment of error asserts that defense counsel rendered ineffective assistance of counsel by failing to utilize an expert in the field of eyewitness identification, which was a central issue at trial. Defendant states that defense counsel pursued a defense of mistaken eyewitness identification by cross-examining witnesses West and Taylor, Jr., regarding the circumstances surrounding their identification of defendant as the perpetrator. Defendant contends he was entitled to the assistance of an expert in eyewitness identification upon a showing that such assistance was likely to be a significant factor at trial in the proper representation of defendant. Defendant argues that defense counsel's failure to file a motion seeking such assistance deprived defendant of an opportunity to put on a successful defense, thereby constituting ineffective assistance of counsel and requiring this court to reverse defendant's convictions and remand for a new trial.
 {¶ 40} To demonstrate ineffective assistance of counsel, the defendant must meet a two-part test. Strickland v. Washington
(1984), 466 U.S. 668, 686, 104 S.Ct. 2052. Initially, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. The defendant then must show that counsel's deficient performance prejudiced the defense. Id. This requires showing that but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694.
 {¶ 41} Due process requires that indigent defendants be provided expert assistance when necessary to present an adequate defense. Ake v. Oklahoma (1985), 470 U.S. 68, 77,105 S.Ct. 1087; State v. Mason (1998), 82 Ohio St.3d 144, 149, certiorari denied, 525 U.S. 1057. To obtain expert assistance at state expense, the defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial. Mason, at 150.
 {¶ 42} Defendant has not shown demonstrable prejudice in this case. Nothing in the record indicates what type of assistance an expert in eyewitness testimony would have provided. Thus, resolving this issue in defendant's favor would be "purely speculative." See State v. Madrigal (2000), 87 Ohio St.3d 378,390-391. Defense counsel fully cross-examined the eyewitnesses to cast doubt on the accuracy of their recollections. "The failure to call an expert and to instead rely on cross-examination does not constitute ineffective assistance of counsel." State v.Nicholas (1993), 66 Ohio St.3d 431, 436, citing State v.Thompson (1987), 33 Ohio St.3d 1, 10-11. Further, the state did not rely solely on eyewitness identifications to link defendant to the subject crimes. Rather, the state presented other substantial evidence connecting defendant to the crimes, including defendant's fingerprints, his possession of the victim's bracelet, bank records, and the time frames surrounding defendant's activities and the commission of the crimes. Defendant's claim of ineffective assistance of counsel on this record is without merit, and his seventh assignment of error is overruled.
 {¶ 43} In his eighth assignment of error, defendant asserts that the trial court's sentencing defendant to "non-minimum, maximum" and consecutive sentences violated defendant's Sixth Amendment right to trial by jury, in contravention of Blakely v.Washington (2004), 542 U.S. ___, 124 S.Ct. 2531. Because under the first assignment of error this case must be remanded for resentencing, defendant's eighth assignment of error is moot, and we decline to address it.
 {¶ 44} Having sustained defendant's first assignment of error, rendering defendant's second and eighth assignments of error moot, and having overruled defendant's third, fourth, fifth, sixth, and seventh assignments of error, we reverse defendant's convictions of rape and aggravated murder premised on rape and modify the judgment to reflect verdicts of guilt on one count of attempted rape and one count of aggravated murder predicated on attempted rape, the other verdicts remaining unaltered, and we remand for resentencing of defendant consistent with this court's opinion.
Judgment affirmed in part and modified in part; case remandedfor resentencing.
Bowman and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.