[Cite as *State v. Gross*, 2018-Ohio-4557.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2018-01-001 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | | 11/13/2018 |
| | : | |
| - vs - | | |
| | : | |
| FRANKLIN B. GROSS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 16CR12193

Martin P. Votel, Preble County Prosecuting Attorney, Eric E. Marit, Preble County Courthouse, 101 East Main Street, Eaton, OH 45320, for plaintiff-appellee

Engel and Martin LLC, Joshua A. Engel, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, OH 45040, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Franklin Gross, appeals his conviction in the Preble County Court of Common Pleas for rape.

{¶ 2} In March 2016, appellant and his three adult children, daughter Courtney and sons Christopher ("Chris") and Cody, lived together in appellant's house, an A-frame structure. Appellant's and Chris' bedrooms were on the first floor; Courtney's and Cody's bedrooms were on the second floor. A couch and love seat arranged in an "L" shape in the

living room were visible from a balcony on the second floor.

{¶ 3} On March 12, 2016, the victim and Shawna Schnitker ("Shawna") went bar-hopping with Courtney. Jesse Isaacs ("Jesse"), Courtney's boyfriend, eventually joined them. The victim and Shawna drank and smoked marijuana and were both quite intoxicated by the time the group left the last bar around 2:00 a.m. on March 13, 2016. Consequently, Courtney invited the victim and Shawna to spend the night at appellant's nearby house.

{¶ 4} Shortly after arriving at appellant's house, the three women and Jesse retired for the night. Courtney gave a blanket to the victim. The victim slept on the couch and Shawna slept on the love seat. Courtney and Jesse slept in her bedroom. Appellant and his sons slept in their respective bedrooms.

{¶ 5} Around 6:30 a.m. on March 13, 2016, the victim awoke, face down on the couch, with her underwear and jeans around her ankles. She could feel someone on top of her from behind. Moreover, she could feel skin to skin contact and lower pressure around her vagina. Being somewhat disoriented and confused, the victim turned to look back and saw appellant, naked, humping her from behind. Upon noticing that the victim had awaken, appellant got off of her and walked to the other side of the living room before leaving the room altogether. Upon realizing what had happened, the victim sat up, pulled up her pants and underwear, and woke up Shawna.

{¶ 6} The two went to another friend's home, and then to the emergency room where the victim was interviewed and examined by a sexual assault nurse examiner ("SANE nurse"). The examination revealed no injuries. As part of her examination, the SANE nurse took four swabs from the victim's vagina, two internally and two externally. The swabs were submitted for analysis. The analysis revealed semen matching appellant's DNA on all four vaginal swabs.

{¶ 7} Appellant denied he had sexual contact or engaged in sexual conduct with

the victim. Rather, appellant claimed he twice got up during the night to tend to the victim because she was coughing hard and he feared she would vomit. Appellant noticed that the victim was twisted in the blanket, with her underwear and jeans down to her knees. Appellant claimed that while tending to the victim, she urinated on herself. Consequently, appellant grabbed a dirty towel from the bathroom and placed it either underneath or behind the victim. Appellant claimed that his semen found in the victim's vagina was a secondary transfer from the towel, which he had used earlier in the evening to clean himself after masturbating while watching a pornographic movie.

{¶ 8} Appellant was indicted in December 2016 on two counts of rape, two counts of gross sexual imposition, and three counts of sexual imposition. A jury trial was held on September 25, 2017. The victim, Shawna, the SANE nurse, the victim's friend, Detective Dean Miller of the Preble County Sheriff's Office, and Mary Cicco, a forensic scientist in the DNA field, testified on behalf of the state. Appellant, his three children, and Jesse testified on behalf of appellant. Following the state's case-in-chief, appellant moved to dismiss one count of rape and one count of gross sexual imposition, arguing the state failed to prove appellant committed the offenses with force or threat of force. Appellant further argued the state failed to prove penetration. The trial court overruled the motion. Subsequently, the state dismissed the three counts of sexual imposition.

{¶ 9} On September 27, 2017, the jury found appellant guilty on both counts of rape and both counts of gross sexual imposition. At sentencing, the trial court merged the second rape count and both gross sexual imposition counts with the first rape count as allied offenses of similar import. The court then sentenced appellant to four years in prison.[1]

_____

1. We note that appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree. At sentencing, the trial court properly notified appellant, "The Defendant will serve a mandatory period of postrelease control of five years." However, the trial court's November 15, 2017 sentencing entry incorrectly states, "The Court has further notified the Defendant that post release control is mandatory in this case up to a maximum of five years for the second degree mandatory

{¶ 10} Appellant now appeals, raising two assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE CONVICTION FOR RAPE IN THIS MATTER WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 13} Appellant argues that his rape conviction is not supported by sufficient evidence because the state failed to prove penetration.

{¶ 14} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."  An appellate court reviews the denial of a Crim.R. 29(A) motion pursuant to the same standard as that used to review a sufficiency-of-the-evidence claim.  *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 22.

{¶ 15} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction.  *Id.* at ¶ 23.  The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 16} Appellant was convicted of rape, in violation of R.C. 2907.02(A)(1)(c), which provides in relevant part that

> No person shall engage in sexual conduct with another who is not the spouse of the offender when [t]he other person's ability to resist or consent is substantially impaired because of a physical condition and the offender knows or has reasonable cause to believe that the other person's ability to resist or

sentence."

- 4 -

consent is substantially impaired because of a physical condition.

{¶ 17} As pertinent to this appeal, sexual conduct means "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 18} The victim testified she woke up, face down on the couch, with her underwear and jeans around her ankles. She could feel someone on top of her from behind. Further, she could feel skin to skin contact and lower pressure around her vagina. When she turned to look back, she saw appellant, naked, humping her from behind. The victim further testified that later on at the emergency room, she experienced some blood spotting even though she was not on her period and had not experienced spotting before sleeping at appellant's house. She further noticed that her vaginal area was "kind of raw" and that she "had a little pain." The victim admitted that she did not know whether appellant had ejaculated. She further admitted telling Detective Miller that she did not believe appellant had ejaculated into her vagina and that she was not sure whether he had penetrated her. However, she could feel appellant's penis in the area of her crotch and vagina during the incident.

{¶ 19} The SANE nurse testified she interviewed and examined the victim. The sexual assault report completed by the nurse and containing a transcription of statements the victim made during the examination, was admitted into evidence. The victim described finding appellant on top of her, "straddling [her] from behind" and "moving in a motion like he was having intercourse." The victim told the nurse she was "not sure if [appellant] had completely penetrated me or how long he was on top of me but I could feel his penis in my vaginal area while he made that humping motion." The victim complained of tenderness in

the vaginal area, however the examination revealed no injuries.

{¶ 20} Cicco, the DNA forensic scientist, testified that a dry stain swabbed from the victim's buttocks matched appellant's DNA. She further testified that semen matching appellant's DNA was found on all four vaginal swabs. Hence, appellant's semen was found inside the victim's vagina. Nonetheless, Cicco could not tell whether penetration had occurred. In addition to penetration, Cicco acknowledged that semen could be "introduced to a person's body in more than one fashion" through secondary transfer. Cicco conceded that secondary transfer could occur through a careless exterior swabbing of the vaginal cavity or the use of the semen-covered towel on the victim's naked body. This was so because of the sticky, mucous nature of semen:

> Everything in that vicinity is very closely related in proximity which is why my testing cannot tell penetration. I can tell you that semen was present. I can tell you what the DNA result is. I cannot tell you if penetration occurred because of the nature of semen and how it drains and seeps * * * just the way the body fluid works.

{¶ 21} Appellant argues that given the victim's vague testimony and Cicco's "explicit" testimony that "the presence of semen in the alleged victim's vagina was *not* evidence of penetration," the state failed to prove penetration. Appellant cites several decisions in support of his argument, including the Ohio Supreme Court's decision in *State v. Ferguson*, 5 Ohio St.3d 160 (1983). In four of the cases cited by appellant, the reviewing courts found there was insufficient evidence of penetration. The fifth case involved attempted unlawful sexual conduct with a minor, and the last case only referred to penetration in its facts.

{¶ 22} In *Ferguson*, the supreme court considered whether a victim's testimony that she and the defendant "had intercourse a couple times" was sufficient evidence of sexual conduct to uphold a rape conviction. The supreme court found that it was not, stating

> We hold that the state's evidence on the element of sexual conduct was insufficient to establish that appellee had either

vaginal or anal intercourse with the victim. The victim's testimony was that she and appellee only had "intercourse." The victim did not testify that she and appellee had sexual intercourse, nor did the victim testify as to *any* degree of penetration. Inasmuch as one of the accepted definitions of the term "intercourse" relates to sexual intercourse, we could infer from the victim's testimony that she and appellee engaged in sexual intercourse. Two considerations prevent us from drawing that inference. First, in recognition of the state's burden of proof in criminal cases, we will not draw inferences against the accused from what must be characterized as vague and ambiguous testimony. Second, the record is completely devoid of any other evidence from any source that appellee and the victim engaged in "sexual intercourse" on the evening in question.

Consequently, in a rape prosecution where the state's evidence is essentially the testimony of the victim, and where the victim testifies that she and the accused only had "intercourse" and does not testify as to any degree of vaginal or anal penetration, convictions on charges relating to either vaginal or anal intercourse are based on insufficient evidence.

(Emphasis sic.) *Id.* at 167-168.

{¶ 23} We find that *Ferguson* is not applicable. The victim testified that appellant was behind and on top of her, humping her, that she could feel skin to skin contact and pressure around her vagina, and that she could feel appellant's penis in the area of her crotch and vagina during the incident. This testimony was more detailed and specific than the "vague and ambiguous testimony" that "we had intercourse a couple times" in *Ferguson.* Additionally, and unlike in *Ferguson*, appellant's semen was found in the victim's vagina. While this evidence was not conclusive of penetration, it is consistent with penetration.

{¶ 24} We likewise find that the other decisions cited by appellant are distinguishable and therefore inapplicable, in that (1) there was no context for the medical findings because the infant victim could not testify as to what happened, *see State v. Murphy*, 5th Dist. Stark No. 2015CA00024, 2015-Ohio-5108; (2) there was no evidence of the offender's semen in the victim's vagina or anal cavity, *see In re J.S.*, 8th Dist. Cuyahoga No. 102800, 2015-

Ohio-4990; (3) the appellate court specifically noted the absence of semen inside the victim's anus, *see State v. Lee*, 10th Dist. Franklin No. 03AP-436, 2004-Ohio-5540; or (4) the cases do not stand for the proposition that testimony of "pressure" to the vaginal area, when combined with other evidence, cannot support a conviction for rape. *See State v. Brannon*, 12th Dist. Butler No. CA2016-05-096, 2017-Ohio-628; *State v. Valenzona*, 8th Dist. Cuyahoga No. 89099, 2007-Ohio-6892.

{¶ 25} Contrary to appellant's assertion, Cicco did not testify that the presence of appellant's semen in the victim's vagina was not evidence of penetration. Rather, she testified that she could not tell whether penetration had occurred, nor could she opine whether the presence of the semen in the victim's vagina resulted from penetration or secondary transfer.

{¶ 26} In a recent case from the Eighth Appellate District, a victim testified that she went to sleep after consuming numerous alcoholic drinks, that she did not believe she had been penetrated, and that to her knowledge, she did not have sexual intercourse that night. There was no physical evidence of penetration. However, the offender's DNA was found on all of the victim's vaginal swabs, and two of the swabs were taken from the victim's vaginal canal and cervix. Based upon the foregoing evidence, the appellate court upheld the offender's rape conviction as follows:

> Pivotally, the record also indicates that semen was present on all four vaginal swabs and all four anal swabs, as well as on [the victim's] undergarment. In addition, the record indicates that I.N.R.'s DNA was found on [the victim's] vaginal swabs, anal swabs, and undergarments. Thus, because I.N.R.'s DNA was found in [the victim's] vaginal canal and cervix, any rational trier of fact could conclude that I.N.R. penetrated the victim as she lay sleeping, following an episode of binge drinking.
>
> Although the evidence of penetration is circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. As such, in reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier

of fact could conclude there exists sufficient evidence to sustain I.N.R's delinquency adjudication.

(Citations omitted.) *In re I.N.R.*, 8th Dist. Cuyahoga No. 99983, 2014-Ohio-3582, ¶ 34-35.

{¶ 27} Here, viewing the victim's testimony, the forensic evidence of appellant's semen inside the victim's vagina, and Cicco's testimony as to how the semen could have found its way into the vagina, including through penetration, in a light most favorable to the prosecution, we find there was sufficient evidence of penetration. *See In re I.N.R.*; *State v. Carter*, 89 Ohio St.3d 593 (2000) (finding sufficient evidence of penetration to support a rape conviction where defendant's semen was found in the decedent's rectum, where defendant denied any sexual conduct with the decedent, and where defendant presented a theory at trial that his semen was deposited on the outside of the body and seeped into the anus).

{¶ 28} Appellant nonetheless argues that the jury "could not infer penetration from the presence of semen" in the victim's vagina because such inference was "directly contradicted by testimony that the mere presence of DNA in a person's vagina is not, in fact, evidence of penetration," and because there were competing constructions of the evidence, namely that given its sticky and mucous nature, the semen found in the victim's vagina could have resulted from a careless swabbing of the vagina or the use of the semen-covered towel.

{¶ 29} Once again, we reiterate that Cicco did *not* testify that the presence of appellant's semen in the victim's vagina was not evidence of penetration. The fact that the forensic evidence as to the semen's presence in the victim's vagina is equally susceptible to inferences of innocence as well as inferences of guilt does not mean that the evidence was insufficient to support appellant's rape conviction. It is well-established that where the state relies on circumstantial evidence to prove an element of the offense charged, the

evidence need no longer be irreconcilable with any reasonable theory of innocence to support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), overruling *State v. Kulig*, 37 Ohio St.2d 157 (1974); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954. Hence, the jury was "not required to accept a 'competing inference of innocence' when the same circumstances could also infer guilt beyond a reasonable doubt." *State v. Sutton*, 8th Dist. Cuyahoga No. 100037, 2014-Ohio-1074, ¶ 38.

{¶ 30} In light of the foregoing, we find there was sufficient evidence to support appellant's rape conviction. Appellant's first assignment of error is overruled.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE CONVICTION IN THIS MATTER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 33} Appellant argues that his rape conviction is against the manifest weight of the evidence because the victim's testimony was not credible and was contradicted by "significant, additional evidence." Appellant asserts the victim's testimony was not credible because she had been drinking and smoking marijuana before the incident and was therefore intoxicated.

{¶ 34} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in

extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal.  *Id.* at ¶ 18.

{¶ 35} At trial, the victim acknowledged that she was quite intoxicated by the time she went to appellant's house, that she could not "really recall what happened once we got there" and before she went to sleep on the couch, and that she was confused and disoriented when she woke up, with appellant humping her from behind.  The victim explained, "It took a minute to realize where I was, let alone what was happening.  I was confused, really confused."  The victim testified she did not scream, call out, or talk to appellant at the time of the incident.  Rather, she pulled up her underwear and jeans, woke up Shawna, and left appellant's house as quickly as possible.  While her lower stomach and jeans were wet, mid-thigh up, she did not believe she had urinated on the couch.  She explained that while "I've drank and done my fair share of recreational drugs[,] I've never been one to vomit in my sleep, urinate in my sleep."

{¶ 36} The victim testified that she was "pretty hysterical" and "crying pretty hard" while driving to her friend's house, and that once there, she collapsed onto a fetal position, cried, and refused to be physically comforted.  Her testimony was corroborated by the testimony of her friend and Shawna.  The victim was examined by the SANE nurse at 9:30 a.m.  The nurse testified that the victim was alert and oriented during examination and that she was tearful at times.

{¶ 37} Appellant asserts that the victim's testimony was not credible and was contradicted by "significant, additional evidence," namely the testimony of his children and Jesse.  Jesse testified he heard the victim cough on two occasions and appellant check on the victim.  Courtney testified she heard strong coughing in the middle of the night.  However, she told Detective Miller she assumed it was appellant as he and his children all smoke.  Appellant's children and Jesse testified that no one screamed, yelled, or called out

during the night. However, as stated above, the victim testified she did not scream, call out, or talk to appellant at the time of the incident. Trial testimony indicates that Shawna was the only one sleeping in the same room as the victim, and that appellant's children and Jesse all slept in bedrooms with their doors either closed or partially closed. Courtney and Jesse both testified that the victim had urinated on the couch, that the smell of urine was strong, and that appellant ordered that the couch be cleaned. Appellant's children and Jesse all admitted that their knowledge of the victim urinating on the couch came directly from appellant and not from their own, independent observation.

{¶ 38} As stated earlier, appellant denied he had sexual contact or engaged in sexual conduct with the victim. Rather, appellant claimed he twice got up during the night to tend to the victim because she was coughing hard and he feared she would vomit. Upon checking on the victim, appellant noticed that she was twisted in the blanket, with her underwear and jeans down to her knees. While appellant was tending to the victim the second time, she urinated on herself. Consequently, appellant grabbed the semen-covered towel from the bathroom and placed it either underneath or behind the victim. Appellant admitted that rather than tending to the victim himself, he could have woken up Shawna or Courtney, especially since the latter was not intoxicated after bar-hopping. However, appellant testified he did not wake up Shawna for fear she would blame him for the fact the victim's jeans and underwear were down to her knees. Likewise, appellant did not wake up Courtney because he did not want her to deal with the situation.

{¶ 39} Trial testimony revealed that appellant did not mention that the towel was semen covered during his interview with Detective Miller two days after the incident, and in fact did not publicly speak about it until his jury trial. Trial testimony further revealed that following the release of the DNA report and appellant's arrest, appellant contacted Planned Parenthood and inquired the following: "If my girlfriend jerked me off and I wiped off the

semen on a wet to damp towel, how possible would it be to find semen inside of her vagina." Appellant testified he was told it was possible, and that "[f]rom the towel [semen] will travel towards the vagina because that's what the semen does."

{¶ 40} As to the victim's motive behind her rape allegations, appellant surmised the victim either hallucinated or made up a story because she was embarrassed for having urinated on the couch. Appellant further surmised that "[m]aybe [the victim] woke up in the morning, realized she had wet herself, and used a towel and wiped herself before getting dressed."

{¶ 41} "A witness' intoxication is one of many factors that may be weighed by the jury in assessing credibility." *State v. Miller*, 6th Dist. Erie No. E-16-037, 2017-Ohio-7986, ¶ 21. While it may provide appropriate fodder for cross-examination, it does not render the witness' testimony per se incredible, nor does it require the jury to discredit all of the witness' testimony. *Id.*; *State v. Jarrell*, 10th Dist. Franklin No. 96APA03-357, 1996 Ohio App. LEXIS 5767, * 32 (Dec. 17, 1996).

{¶ 42} We find that the jury did not lose its way and create such a manifest miscarriage of justice in finding appellant guilty of rape. The jury heard testimony that the victim had been drinking and had smoked marijuana while bar-hopping and that she was quite intoxicated by the time she arrived at appellant's house. However, the SANE nurse testified that the victim was alert and oriented by the time the examination began at 9:30 a.m. Appellant provided an explanation as to why his semen and DNA were inside the victim's vagina. His children and Jesse testified on his behalf.

{¶ 43} As the trier of fact, the jury was in the best position to see and hear the witnesses, and observe their demeanor, equivocation, and candor when it determined the weight to be given their testimony. *See Wright*, 2018-Ohio-1982 at ¶ 30; *Miller*, 2017-Ohio-7986 at ¶ 12. By its verdict, the jury plainly chose to credit the testimony of the victim and

conclude that appellant's version was not credible. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible, and we will not disturb the jury's verdict on appeal. Appellant's rape conviction is therefore not against the manifest weight of the evidence. *Miller* at ¶ 22; *In re I.N.R.*, 2014-Ohio-3582 at ¶ 42-43.

{¶ 44} Appellant's second assignment of error is overruled.

{¶ 45} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.